THE COUNTY OF COOK, Plaintiff-Appellant, v. CHICAGO MAGNET WIRE CORPORATION, Defendant-Appellee.

First District (2nd Division)   No. 85—2949

Opinion filed February 10, 1987.—Rehearing denied March 10, 1987.

Richard M. Daley, State's Attorney, of Chicago (Glenn Carr, Glenn Sechen, Frank J. Parkerson, Lynn Worley, and Michael C. Moses, Assistant State's Attorneys, of counsel), for appellant.

David L. Rieser and Robert Marks, both of Marks, Marks &-Kaplan, Ltd., of Chicago, for appellee.

JUSTICE BILANDIC delivered the opinion of the court:

Plaintiff, County of Cook, is a body politic and corporate. (Ill. Rev. Stat. 1985, ch. 34, par. 301.) It enacted the Cook County Environmental Control Ordinance which provides that "[t]he emission of noxious, odorous or toxic matter in such manner or quantity as to be detrimental or endanger the public health, comfort or welfare, is prohibited." (Cook County, Ill. Ordinances, ch. 16, sec. 8.1 (1980).) Defendant, Chicago Magnet Wire Corporation, operates a wire-coating plant in Cook County. From February 18, 1983, to June 28, 1983, defendant received nine citations for violation of the ordinance. On August 23, 1985, the trial court granted defendant's motion to dismiss the citations on the grounds that the county ordinance was unconstitutionally vague and that plaintiff was guilty of *laches* because of its delay in prosecution after the action was brought. The trial court did not rule on defendant's additional ground that the county was precluded from adopting its ordinance by the State legislature's enactment of the Illinois Environmental Protection Act (Ill. Rev. Stat. 1985, ch. 111½, par. 1001 *et seq.*).

I

There is no dispute that the citations were issued by plaintiff concurrent with the alleged violation of the ordinance by defendant. The sole basis for dismissal on the ground of *laches* deals with the alleged delay between the filing of the charges and the disposition of the case.

■■ ■ The general rule is that the statute of limitations or *laches* may not be asserted against the State or its county or municipal subdivisions in actions involving public rights. (*City of Shelbyville v. Shelbyville Restorium, Inc.* (1983), 96 Ill. 2d 457, 451 N.E.2d 874.)

Where a governmental body is engaged in a matter of the exercise of its governmental functions, the defense of *laches* is not favored and should only be invoked in extraordinary circumstances. (*Haeflinger v. City of Wood Dale* (1984), 129 Ill. App. 3d 674, 677, 472 N.E.2d 1228.) There is no showing of extraordinary circumstances in this case which would justify the trial court's departure from the general rule. *Hickey v. Illinois Central R.R. Co.* (1966), 35 Ill. 2d 427, 220 N.E.2d 415, *cert. denied* (1967), 386 U.S. 934, 17 L. Ed. 2d 806, 87 S. Ct. 957.

■ The record does not reveal any prejudice to defendant brought about by the delay. Defendant either sought or agreed to the delays. If anything, the delay seems to have benefited defendant because it continued to operate its business in the usual manner. Accordingly, the dismissal of plaintiff's action on the basis of *laches* is erroneous.

## II

■ ■ The trial court dismissed plaintiff's action on the basis that the county ordinance was "unconstitutionally vague." Ordinances are presumptively valid, and the burden of establishing invalidity rests upon the party asserting that invalidity. (*Mulligan v. Dunne* (1975), 61 Ill. 2d 544, 338 N.E.2d 6, *cert. denied* (1976), 425 U.S. 916, 47 L. Ed. 2d 768, 96 S. Ct. 1518.) Defendant, in a facial challenge or where no fundamental rights are affected, is required to demonstrate that the ordinance is vague in all of its applications. *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.* (1982), 455 U.S. 489, 71 L. Ed. 2d 362, 102 S. Ct. 1186.

To meet its burden, defendant asserts that the ordinance is unduly vague because it contains no articulable objective standard by which to judge whether the ordinance was violated. Defendant also argues that insofar as the ordinance seeks to codify a public nuisance, it is insufficient because it does not contain standards to be considered in determining whether a public nuisance exists.

Plaintiff replies that the terms of the ordinance, including "toxic," "noxious," "odorous," and "public health, comfort and welfare," all have a commonly understood meaning or are defined in the ordinance. Odors are defined as "that quantity of an emission of any kind, whether it be solid, liquid or gaseous that renders it perceptible to the sense of smell." (Cook County, Ill. Ordinances, ch. 16, sec. 3.2 (1980).) Noxious odors are defined as "any odors which are unwholesome, offensive, harmful, or injurious to the public health, its comfort or its welfare." (Cook County, Ill. Ordinances, ch. 16, sec. 3.2 (1980).) Plaintiff also refers to common definitions of the terms "toxic," which

means "poisonous." (Black's Law Dictionary 1337 (5th ed. 1979).) Furthermore, because an ordinance must be considered in its entirety (*S. Bloom, Inc. v. Korshak* (1972), 52 Ill. 2d 56, 284 N.E.2d 257), it must be stressed that these terms are limited by the phrases "in such a manner and quantity" and "public health, comfort or welfare." These terms have long been acceptable standards in this State. *County of Du Page v. Henderson* (1949), 402 Ill. 179, 83 N.E.2d 720.

In the context of the vagueness doctrine, two principles prevail. "First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he can act accordingly. *** Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards to those who apply them." *Grayned v. City of Rockford* (1972), 408 U.S. 104, 108, 33 L. Ed. 2d 222, 227, 92 S. Ct. 2294, 2298-99.) However, mathematical certainty can never be expected from an enactment and it need only convey sufficient definite warning as to the proscribed conduct when measured by common understanding and practice. (*Grayned v. City of Rockford* (1972), 408 U.S. 104, 33 L. Ed. 2d 222, 92 S. Ct. 2294.) In construing the present ordinance, then, it is axiomatic that impossible standards of specificity are not required and its words and terms will be given their ordinary and popularly understood meaning, with due consideration of the objectives and the evil sought to be remedied. *People v. Schwartz* (1976), 64 Ill. 2d 275, 356 N.E.2d 8, *cert. denied* (1977), 429 U.S. 1098, 51 L. Ed. 2d 545, 97 S. Ct. 1116.

■ Applying these principles to the case before us, we conclude that the Cook County ordinance is constitutional. The terms used in the ordinance are either sufficiently defined or have commonly accepted and understood definitions. In *Grayned*, the United States Supreme Court upheld the Rockford antinoise ordinance, which reads, in pertinent part:

> " '[N]o person, while on public or private grounds adjacent to any building in which a school or any class thereof is in session, shall willfully make or assist in the making of any noise or diversion which disturbs or tends to disturb the peace or good order of such school session or class thereof ***.' [Citation.]" (*Grayned v. City of Rockford* (1972), 408 U.S. 104, 107-08, 33 L. Ed. 2d 222, 227, 92 S. Ct. 2294, 2298.)

Although the prohibited quantum of disturbance was not specified in decibel levels, it was apparent from the announced purpose of the ordinance that the measure is whether normal school activity is dis-

turbed. The court stated:

"The words of the Rockford ordinance are marked by 'flexibility and reasonable breadth, rather than meticulous specificity,' [citation] but we think it is clear what the ordinance as a whole prohibits." *Grayned v. City of Rockford* (1972), 408 U.S. 104, 110, 33 L. Ed. 2d 222, 229, 92 S. Ct. 2294, 2300.

In light of the foregoing, it is apparent that the ordinance at issue is merely a local codification of a part of the law of nuisance. It is flexible but not overbroad or vague and has recognized standards already in place for its implementation. Thus, the trial court erred in its finding that the Cook County ordinance is unconstitutionally vague.

### III

■ The trial court did not rule on defendant's motion to dismiss based on the argument that plaintiff was without authority to adopt its antiodor ordinance because the subject matter was preempted by the State when it enacted the Environmental Protection Act (Act) (Ill. Rev. Stat. 1985, ch. 111½, par. 1001 *et seq.*). Nevertheless, defendant urges us to consider this point on review. We will consider the preemption issue in the interest of judicial economy.

The Cook County ordinance declaring certain odors a public nuisance was first adopted by the Board of Commissioners of Cook County on April 30, 1963. (Cook County, Ill. Ordinances, ch. 16, sec. 8.1 (1980).) The purpose of the ordinance is to promote public health, safety, welfare, and comfort as well as to promote, aid, and cooperate with local governmental agencies within the Cook County region in developing environmental programs. The adoption of the ordinance, therefore, is within the police power of the county. In addition, section 25 *et seq.* of "An Act to revise the law in relation to counties" (Ill. Rev. Stat. 1985, ch. 34, par. 401 *et seq.*,) confers additional powers on the county and does not limit existing powers. Thus, under the 1870 Constitution, the County of Cook had specific authority to enact the ordinance. Ill. Rev. Stat. 1985, ch. 34, par. 421.2.

The State has also legislated in this field by the adoption of the Environmental Protection Act approved June 29, 1970, effective July 1, 1970 (Ill. Rev. Stat. 1985, ch. 111½, par. 1002(a)(iv)). This act did not express the intent that the State should exclusively occupy this field, but rather provided that it is the obligation of the State government "to encourage and assist local governments to adopt and implement environmental-protection programs consistent with this Act." (Ill. Rev. Stat. 1985, ch. 111½, par. 1002(a)(iv).) A unified statewide program supplemented by private remedies was envisioned by the Act

(Ill. Rev. Stat. 1985, ch. 111½, par. 1045(a)). It has been held, therefore, that a local governmental unit may legislate concurrently with the General Assembly on environmental control. (*City of Chicago v. Pollution Control Board* (1974), 59 Ill. 2d 484, 322 N.E.2d 11.) Such legislation, however, must conform with the minimum standards established by the legislature. 59 Ill. 2d 484, 489, 322 N.E.2d 11.

The State Act contains an antiodor provision which is inclusive of the ordinance in question. (Ill. Rev. Stat. 1985, ch. 111½, par. 1009(a).) The State Act clearly states: "[E]nvironmental damage seriously endangers the public health and welfare." (Ill. Rev. Stat. 1985, ch. 111½, par. 1002(a)(i).) It sets forth a legislative declaration that pollution of the air constitutes a menace to public health and welfare and creates a public nuisance. Thus, it is clear that the county ordinance, which codified and enforces a portion of the common law of nuisance, conforms with the State Act.

Defendant also asserts the county, as a home rule unit, has exceeded its authority under the 1970 Illinois Constitution. The county ordinance predates the 1970 Illinois Constitution, which was approved December 15, 1970, and became effective July 1, 1971. (Ill. Const. 1970, art. VII, sec. 6(a).) Section 9 of the transition schedule of the 1970 Constitution provides that ordinances of public bodies were to remain in force until they expired by their own limitation or until they were altered or repealed pursuant to the 1970 Constitution. The ordinance at bar has not expired of its own terms, nor has it been the subject of preempting legislation under the 1970 Constitution.

The county antiodor ordinance, which was first passed in 1963, was reenacted by the County Board subsequent to the effective date of the 1970 Constitution as part of the Cook County Environmental Protection Ordinance (Cook County, Ill. Ordinances, ch. 16, sec. 8.1 (1980)), pursuant to the new home rule powers granted to units of local government by the 1970 Constitution (Ill. Const. 1970, art. VII, sec. 6(a)).

Cook County validly exercised its home rule powers. The 1970 Constitution delegated broad home rule powers to units of local government. (Ill. Const. 1970, art. VII, sec. 6(a).) In *County of Cook v. John Sexton Contractors Co.* (1979), 75 Ill. 2d 494, 389 N.E.2d 553, the court affirmed the holding of *City of Chicago v. Pollution Control Board* (1974), 59 Ill. 2d 484, 322 N.E.2d 11, insofar as it related to the authority of a home rule unit to legislate on environmental matters.

State legislation which restricts or preempts home rule power must be enacted subsequent to the effective date of the 1970 Consti-

732

tution and pursuant to the provisions of the 1970 Constitution. (*City of Evanston v. Create, Inc.* (1981), 85 Ill. 2d 101, 108, 421 N.E.2d 196; *County of Cook v. John Sexton Contractors Co.* (1979), 75 Ill. 2d 494, 513, 389 N.E.2d 553.) The State, through its Environmental Protection Act, has not restricted or preempted the power of the county to legislate concurrently with the State in environmental matters.

Based on the foregoing, we conclude that the county antiodor ordinance was lawfully enacted and the county ordinance is not preempted by the Illinois Environmental Protection Act.

Accordingly, the order of the circuit court of Cook County is reversed and this cause is remanded for further proceedings consistent with the views expressed herein.

Reversed and remanded.

STAMOS and HARTMAN, JJ., concur.